

548

## OFFICE OF THE ATTORNEY GENERAL OF TEXAS

### AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Geo. H. Sheppard
Comptroller of Public Accounts
Austin, Texas

Dear Sir:

Opinion No. O-1132
Re: Whether certain counties,
school districts and cities
(subjects of tax grants and
remissions) are entitled to
homestead exemption from
taxation.

We received your opinion request of July 15, 1939, reading as follows:

"Please refer to the following Acts passed by the Legislature and advise us whether the State taxes donated by the Legislature should be charged to homesteads in said counties:

"States taxes granted to the City of Aransas Pass from San Patricio County, Chapter 22, page 32, Third Called Session of the 36th Legislature.

"Taxes donated to the city of Port Arthur from Jefferson County, Chapter 292, page 656, Regular Session of the 41st Legislature.

"Taxes donated to the city of Port Lavaca from Calhoun County, Chapter 24, Page 37, Third Called Session of the 36th Legislature.

"Taxes donated to the Nevada Independent School District in Collin County, Chapter 56, page 159, First Called Session of the 40th Legislature."

Chapter 22, page 32, 3rd Called Session, 36th Legislature, reads in part as follows:

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Hon. Geo. H. Sheppard, Page 2

"Section 1. That for a period of twenty years, commencing with the fiscal year beginning September 1, 1920, there be and hereby are donated and granted by the State of Texas to the City of Aransas Pass, eight-ninths (8/9) the net amounts of the State ad valorem taxes collected upon the property and from persons in the county of San Patricio, including the rolling stock belonging to railroad companies which shall be ascertained and apportioned as now provided by law.

"Sec. 5. The moneys herein and hereby granted and donated to the City of Aransas Pass are declared to be trust funds for the purpose of aiding the City of Aransas Pass in paying the interest and sinking fund upon an issue or issues of bonds, the proceeds of which bonds are to be used exclusively in constructing and maintaining seawalls, breakwaters and shore protections out into Red Fish Bay, and to fill in the space between the shore and such seawalls, breakwaters and shore protections in order that said city be removed from calamitous overflows. The use and diversion of such moneys for any other purpose whatsoever is hereby prohibited; . . .

"Sec. 6. The fact that the greater portion of the business part of the City of Aransas Pass and all of the shipping district is located near the shore line of Red Fish Bay, only a few feet above sea level, and the fact that the waves are daily eroding the shore line of said bay and inundating valuable property, and the fact that the hurricanes of 1916 and 1919 have demonstrated that without protection the City of Aransas Pass is in imminent danger of destruction, of again suffering great damage and loss of life, create an emergency and an imperative public necessity that the Constitutional rule requiring bills to be read on three several days be suspended and this Act take effect and be in force from and after its passage, and it is so enacted."

The constitutionality of the grant to Aransas Pass was sustained in the case of City of Aransas Pass vs. Keeling, 247 S. W. 818, by the Supreme Court. After pointing out that the use of cities and counties as agents of the State in the discharge of the State's duty is not inhibited by Constitution, the Supreme Court in the course of its opinion said:

Hon. Geo. H. Sheppard, Page 3

"To the extent that the state aids in protecting Aransas Pass from the menace of storms through the grant of part of the state taxes, she discharges a state obligation, and hence no question arises as to lending or pledging the state's credit to a municipal corporation or for payment of the liabilities of such a corporation. Under the legislative act, the city of Aransas Pass alone issues and promises to pay the bonds. While the state undertakes to aid Aransas Pass to meet the bonds by granting the city certain taxes, yet the state does not guarantee payment of the bonds. The state's credit is in no wise involved. The State's obligation is completely discharged by surrendering to the proper officials of the city eight-ninths of San Patricio County's state taxes for 20 years."

From this opinion of the Supreme Court holding that the grant to Aransas Pass was for a State purpose, we think it follows that in the construction of such shore protections Aransas Pass was not performing a county purpose in behalf of San Patricio County. Stated differently, such State ad valorem taxes were not remitted to San Patricio County by the above Act, but were collected by the State and delivered by it to an agent of the State to be expended for a State purpose.

Article 8, Section 1-a, of the Constitution of Texas, adopted in 1933, reads as follows:

"Three Thousand Dollars ($3,000.00) of the assessed taxable value of all residence homesteads as now defined by law shall be exempt from all taxation for all State purposes; provided that this exemption shall not be applicable to that portion of the State ad valorem taxes levied for State purposes remitted within those counties or other political subdivisions now receiving any remission of State taxes, until the expiration of such period of remission, unless before the expiration of such period the board or governing body of any one or more of such counties or political subdivisions shall have certified to the State Comptroller that the need for such remission of taxes has ceased to exist in such county or political subdivision; then this Section shall become applicable to each county or political subdivision as and when it shall become within the provisions hereof."

From the express wording of the Constitution it clearly appears that a county or other political subdivision is not to be

Hon. Geo. H. Sheppard, Page 4

deprived of the homestead exemption, unless at the time of the adoption of said Article 8, Section 1-a, such county or political subdivision was <u>receiving</u> a remission of State taxes. We have already seen that San Patricio County, as such, was not receiving such a remission. We are clear in the opinion that so much of that County as lies without the boundaries of the City of Aransas Pass cannot be denied the homestead exemption.

We now arrive at the situation within the corporate limits of Aransas Pass, and as to which the answer is a different one. As said by Chief Justice Phillips, in Corporation of San Felipe de Austin vs. State, 229 S. W. 845, "the municipalities of the State are political subdivisions of the State." Under the Act in question eight-ninths (8/9) of the State ad valorem taxes collected in the City of Aransas Pass was granted back to the City for a period of twenty years, for the purposes therein set forth. Aransas Pass was receiving such grant of taxes at the time of the adoption of such Section of the Constitution in 1933. We think this constitutes a "remission" of such taxes within the meaning of the exception to the exemption. The result will necessarily be that the burden will be heavier in the City of Aransas Pass, through denial of the exemption, but such is the language and manifest purpose of the Constitution. We quote from the Supreme Court's opinion in City of Aransas Pass vs. Keeling, supra, further as follows: "It is because of the special benefits to particular cities and counties that special burdens on property within their boundaries, through taxation, are justified." It was doubtless the view of the framers of this Section of the Constitution, and consequently that of the people of Texas in voting it, that the special benefits received by such cities as Aransas Pass from the construction of coastal improvements within their boundaries was sufficient reason for denying them the exemption until the expiration of the respective periods of remission.

We are aware, of course, that bonds were issued by Aransas Pass subsequent to the date of the grant. We are not acquainted with the exact amounts and condition of any such bonds. From the annotation found at 109 A.L.R., p. 818, we quote as follows:

"According to the weight of authority, supported by decisions of the United States Supreme Court, the issuance of bonds or the incurring of other obligations by a municipality under the authority of a statute providing for an annual tax on the 'taxable property' in the municipality for the payment thereof, does not give rise to a contractual obligation not to exempt thereafter any property from the

Hon. Geo. H. Sheppard, Page 5

class of taxable property existing at the time of
incurring the obligations; and hence such an exemption,
which would otherwise be within the power of the Legis-
lature and which does not unreasonably deplete the se-
curity of pre-existing obligations, does not impair
the obligation thereof, within the prohibition of the
contract clause of the Federal Constitution. Gilman v.
Sheboygan (1863) 2 Black. (U.S.) 510, 17 L. ed. 305;
Arkansas S. R. Co. v. Louisiana & A. R. Co. (1910) 218
U. S. 431, 54 L. ed. 1097, 31 S. Ct. 56; State, Hall,
Prosecutor, v. Parker (1869) 33 N.J. L. 312; Bailey v.
Hutch (1867) 6 Phila. (Pa.) 408. And see Palo Verde
Irrig. Dist. v. Seeley (1926) 198 Cal. 477, 245 P.
1092."

The Eldorado Independent School District was a creature of
special legislation. It had outstanding bonds at the time the Legis-
lature passed a special act reducing its area. The District there-
after sought to collect taxes upon the territory thus left out of
its boundaries. Taxpayers sought to enjoin such collection. The
District urged that the contractual rights of the bondholders were
impaired. From Judge Nichels' opinion, Eldorado Independent School
District vs. Tisdale, 3 S. W. (2d) 420, we quote:

"We do not mean to hold that bondholders (or other
taxpayers) do not have or may not in the future acquire
practically justiciable rights against the exclusion
from the district of the properties of defendants in
error. We have commented upon their possibilities
merely by way of negativing present showing of palpable
unconstitutionality in the 1925 act and of right in the
plaintiffs in error to attack the statute on those grounds.
'Laws frequently are enforced which the court recognizes
as possibly or probably invalid if attacked by a different
interest or in a different way.' Quong Wing v. Kirkendall,
223 U. S. 59, 64, 32 S. Ct. 192, 193 (56 L. Ed. 350);
Weaver v. Palmer Bros. Co., 270 U. S. 402, 46 S. Ct. 320,
70 L. Ed. 654, 658."

We notice the further language of the court in the City of
Aransas Pass vs. Keeling case, supra:

"The objection is not tenable that reasonable pro-
vision is wanting to redeem the bonds because the Legis-
lature, after the sale of the bonds, can repeal the dona-
tion of state taxes for 20 years. State and federal au-

the creation of, a certain fund for the bond's payment, such provision of the act enters into the contract be-tween the debtor and the holders of the bonds, so that it cannot be <u>repealed</u> by subsequent legislation without the substitution of something of equal efficacy. The sub-sequent legislation would impair the obligation of the contract, and therefore come under constitutional con-demnation."

The above language had reference to a complete repeal of the tax donation. The court did not mean to say, and did not say that so long as such a grant should be outstanding the State could make no modification, generally effective, of its tax laws.

Chapter 24, page 37, 3rd Called Session, 36th Legislature, reads in part as follows:

"Section 1. That for a period of twenty years, commencing with the fiscal year beginning September the first, A. D. 1920, there be and are hereby donated and granted by the State of Texas to the City of Port Lavaca the net amounts of the State ad valorem taxes to be collected on all property and from all persons owning property in Calhoun County, Texas, including the rolling stock belonging to railroad companies which shall be ascertained and apportioned as now provided by law."

Chapter 292, page 656, Regular Session, 41st Legislature, reads as follows:

"Section 1. That for a period of twenty years, commencing with the fiscal year beginning September 1, 1929, there be and hereby are donated and granted by the State of Texas to the City of Port Arthur, Texas, situated in Commissioners' Precinct Number 2 of Jefferson County, Texas, eight-ninths (8/9) the net amounts of the State Ad Valorem taxes collected on all property, both real and personal, in Commissioners' Precinct Number 2 of Jefferson County, Texas, which shall be ascertained and apportioned as now provided by law."

The grants to the City of Port Lavaca and Port Arthur are similar in other respects to the one quoted more fully above to the City of Aransas Pass. The same principles are applicable. The homestead exemption must be denied within the limits of Port Lavaca, and to the extent of 8/9 in Aransas Pass and Port Arthur during the respective terms of the grants. The other areas in Calhoun County, San Patricio County, and Commissioners' Precinct No. 2 in Jefferson County should receive the exemption.

554

Chapter 56, page 159, 1st Called Session, 40th Legislature, reads in part as follows:

"Section 1. For the purpose of aiding the Independent School District of the City of Nevada, in Collin County, Texas, to be used for school building purposes, all of the State ad valorem taxes on all property in said Independent School District subject to taxation, are hereby donated and granted by the State of Texas to said Independent School District for a period of twenty-five years from the time this act takes effect, to be used by said district as provided in this act. The said taxes shall form the basis of a bond issue as provided herein and shall be used to pay interest and create a sinking fund to pay said bonds. The proceeds of said bonds, when sold, may be used by said district to construct and equip a school building or school buildings.

"Sec. 5. This grant and donation is made under Section 51 of Article 3 of the State Constitution as amended, and the Legislature hereby declares, and makes a legislative finding, that said storm, tornado or cyclone actually occurred and caused great destruction of life and property and destroyed the school building of said school district, and that the same constituted and is a great public calamity justifying and authorizing this act to be passed."

The above is a remission within the meaning of the quoted Section of the Constitution and the area within the boundaries of the Independent School District of Nevada must be denied the exemption during the life of the remission.

We advert to our opinion No. 0-380, dated March 13, 1939, addressed to Honorable James W. Strawn, County Attorney of Nueces County, wherein we advised that the citizens of Willacy, Jim Wells, Brooks, Kleberg, Duval, Jim Hogg and Nueces Counties are entitled to the exemption provided in said Article 8, Section 1-a of the Constitution. The area within the limits of the City of Corpus Christi is not entitled to such exemption during the life of the grant made by Chapter 138, page 270, General Laws, 37th Legislature.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By Glenn R. Lewis
Glenn R. Lewis
Assistant

ORI:N
APPROVED AUG 15, 1939

Gerald C. Mann
ATTORNEY GENERAL OF TEXAS

APPROVED
OPINION
COMMITTEE
BY
CHAIRMAN